**NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA., et al., Plaintiffs,**

**v.**

**ENGINEERING–SCIENCE, INC., et al., Defendants.**

**No. C–85–20716–SW.**

United States District Court,
N.D. California,
San Jose Division.

Nov. 17, 1987.

---

John B. Hook, Long & Levit, San Francisco, Cal., for plaintiffs.

Duane Grummer, Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, San Francisco, Cal., for defendants.

## OPINION

SPENCER WILLIAMS, District Judge.

This action presents the question of whether an insurance carrier, as a matter of law, is barred from bringing a subrogation action against one of its policyholders, whom it has insured for the very liability for which the insurer seeks recovery in its complaint.

### Facts

This case arises from storm damage to an ocean sewer pipeline owned by the Monterey Regional Water Pollution Control Agency [hereinafter the Agency]. The ocean sewer pipeline, or outfall, is a 60 inch reinforced concrete pipe extending 11,000 feet from a junction box on Monterey Bay shore into the Pacific Ocean. The outfall was designed to be partially buried on the ocean floor and then covered with a protective coating of armor rock. In the winter of 1982–83 the ocean outfall suffered storm damage. Damage to the armor rock was discovered in August 1983. It cost the Agency over four million dollars to repair the outfall.

As general contractor, Peter Kiewit & Sons Company built the outfall. Their contract with the Agency required Kiewit & Sons to obtain builders risk insurance. In May of 1982, National Union Fire Insurance Company of Pittsburgh, Pennsylvania issued a policy to the Agency and Peter Kiewit & Sons.

Defendant Engineering–Science, Inc. had designed the ocean outfall, in part based upon data provided by its employee, defendant Dr. Edward B. Thorton. Engineering–Science also had an insurance policy with National Union. They bought a one million dollar errors and omissions policy from National Union several years prior to the winter 1982–83 incident involving the outfall project. The Ralph M. Parsons Company owns the engineering firm, and an indemnity agreement that covers the policy was issued in the Parsons Company name. In fact, the indemnity agreement requires the Parsons Company to reimburse National Union up to $250,000 for losses and loss of expense incurred by National Union in any defense of Engineering–Science. National Union provided primary liability. The engineering firm also carried an additional five million dollars in excess insurance through other insurers, Granite State Insurance and Lexington Insurance.

After the Agency discovered the damage to the pipeline National Union paid a claim of approximately four million dollars to the Agency. Shortly thereafter, plaintiffs instituted this subrogation action against the defendants, alleging faulty design as the cause of the destruction to the outfall. Plaintiffs' complaint asserted that defendants' design inadequately provided for the forces produced by waves and currents and sought damages of over four million dollars from the defendants.

Defendants moved for summary judgment on two grounds. First they assert that, as a matter of law, the plaintiff insurance carrier may not subrogate against

defendants who are its insured for the liability contested in the complaint. Second, they claim that they are coinsureds with the general contractor under the latter's insurance policy with National Union, and as such plaintiffs may not maintain a subrogation action against them. Plaintiffs moved for partial summary judgment. They claim that defendants cannot thwart an attempt at subrogation unless Engineering–Science can show actual prejudice as a result of the subrogation.

*Subrogation*

In only one case has a California court addressed the issue of whether an insurance company may subrogate against its own insured for the liability at question. The court of appeal in *St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.*, 65 Cal.App.3d 66, 135 Cal. Rptr. 120 (1976) considered the issue as one of first impression. The facts of *Murray Plumbing* are similar to those of the instant case. Plaintiff insurer issued a builder's all-risk policy to a general contractor, insuring against damages occurring during construction. A water pipe broke during construction and caused extensive flooding. The insurer paid for the damages pursuant to the policy, then it filed suit against several subcontractors claiming they were responsible for the flood damage. The court in *Murray Plumbing* held that "the bulk of authority elsewhere establishes the principle that an insurer may not subrogate against a coinsured of its obligor." *Id.*, at 75, 135 Cal.Rptr. 120.

Plaintiffs would distinguish *Murray Plumbing* because the insurer covered the contractors and the subcontractors as coinsureds under the same builders risk policy. However, the court in *Murray Plumbing* most heavily relied on the reasoning expressed in *Home Ins. Co. v. Pinski Bros. Inc.*, 160 Mont. 219, 500 P.2d 945 (1972) when it reached its holding. The *Pinski* court refused to allow subrogation by an insurer against its own insured even when the insured subcontractor and insured general contractor were covered under separate policies. *Pinski* cites several public policy reasons to suggest that allowing subrogation in such circumstances would violate basic principles of equity. Drawing upon this reasoning, the court in *Murray Plumbing* quoted at length from *Pinski* when it refused to permit the insurer to sue its own insured for a liability covered by its own policy:

> Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

*Murray Plumbing*, 65 Cal.App.3d at 75, 135 Cal.Rptr. 120 (quoting *Pinski*, 160 Mont. 219, 500 P.2d 945 at 949).

Plaintiffs caution the court against mechanically applying a general rule that an insurer may not subrogate against its own insured. *See*, 16 Couch on Insurance 2d, section 61:133. They suggest that such an interpretation of the rule would apply in so many instances that it would prevent the equitable distribution of liability that the law of subrogation is intended to create. But each example the plaintiffs cite is one where the insurer covers the insured for a liability different from the one upon which the insurance carrier would seek recovery. Surely if National Union had covered Engineering–Science for its worker's compensation insurance it would not be precluded from subrogating against the engineering firm in this case.

This court finds the public policy considerations enumerated in *Pinski* compelling. Subrogation is indeed an equitable doctrine liberally applied to promote justice. *Murray Plumbing*, 65 Cal.App.3d at 72, 135 Cal.Rptr. 120. However, a holding that an insurer may not subrogate against its insured in a situation such as this is not a

mechanical application of the *Pinski* concerns as plaintiffs suggest. Nor is it the broad prohibition of "any subrogation action by an insurer against its insured" against which the court warns in *Transport Trailer Service Inc. v. The Upjohn Co.*, 506 F.Supp. 442, 444 (E.D.Pa.1981). Rather, the court recognizes that a subrogation action such as this raises too many opportunities for mischief. The defendant may precipitate his own failure in such a suit should he expose a broad width of information to his insurer, only to have that insurance carrier use the information at a later time to secure a recovery from its insured in a subrogation action. And ultimately, the insurer may pass the incidence of loss, at least in part, from itself to its own insured and thus avoid the coverage which the insured purchased. *See Pinski*, 500 P.2d at 949.

*Actual Prejudice*

To avoid a mechanical application of the rule against subrogation, plaintiffs urge the court to carefully examine "the true relationship of parties." *Compare, McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 37 (Tex. 1974).[1] Plaintiffs suggest that the court examine each of the considerations identified in *Pinski* to determine if any such prejudice actually exists in this case. Plaintiffs, however, misconstrue the potential inequities listed. They are not a test. Instead, the list illustrates that a situation such as that presented by this case, if allowed, creates the mere possibility of a forum in which these instances of improper control or access may take root. It is this possibility that the courts chose to prohibit.

The plaintiffs offer up a broad sketch of the operations at National Union to fortify their assertion that the court should look to the actual relationships of the parties. In oral argument, plaintiffs' counsel referred to the existence of a "Chinese Wall"—an internal management structure which theoretically separates departments of the company to such an extent that it acts as an impasse to all communications between the departments. Thus, National Union suggests that the department which pursues this action has not had, and can never have, any contact with the department responsible for defending the subrogation. That may very well be. Yet, it would be too great a burden to ask either the court or the defendant to establish whether a Chinese Wall in fact exists in each instance where an insurance carrier wishes to sue one of its policyholders.

National Union even seems to suggest that defendants should be precluded from bringing their motion because Engineering–Science had a duty to protect the Agency which it did not correctly carry out. Plaintiffs note that the agreement between the Agency and Engineering–Science required the design firm to provide the Agency "with certificates of insurance for the coverages listed" prior to the date work was to begin on the pipeline project. National Union contends that Engineering–Science did not give these to the Agency until 1983, after the alleged design error would have been made. Even assuming that National Union's allegations are true, however, there is nothing in the agreement between the Agency and Engineering–Science to suggest that the Agency would have considered subrogation issues concerning its insurer had it realized that National Union also insured its engineer. Plaintiffs suggest that language in the agreement shows that the Agency intended to protect the insurer from having to pay damage properly attributed to Engineering–Science and the engineer's insurer. In particular, section C of the agreement states that the "Engineer shall indemnify and hold Agency harmless from liability

---

**1.** *McBroome–Bennett* is distinguished from this case because the plaintiff had argued that it was a coinsured as a subcontractor, and it therefore was covered under the insurance policy held by the general contractor. The subcontractor did not claim that it was the insurance company's own insured under a policy separate from the general contractor's policy. In fact, the court had to determine whether the companies who held the insurance contract, namely the general contractor and the insurance carrier, ever intended to cover the subcontractor. It was for this purpose that the court examined the relationship of the parties to the lawsuit. Having found that no such intention existed, the court held that the subcontractor was not an assured under the policy issued to the general contractor.

arising out of its errors...." This means what it says: that the Monterey Agency should not pay for losses caused by ESI. It does not suggest that National Union should not pay for losses caused by the engineering firm. Plaintiff's contention that Engineering–Science did not protect the Agency because it obtained an errors and omissions policy through the same carrier as the Agency is without merit. Engineering–Science satisfied the requirement that it obtain sufficient errors and omissions coverage as it was directed.

National Union could present a viable argument regarding a duty of protection if it were clear to all involved that National Union would only cover the Agency if its engineer obtained errors and omissions insurance through a carrier other than National Union. Neither National Union nor the Agency, however, made any such requirement known to Engineering–Science, despite the specification in the Agency/Engineering–Science agreement that the engineering firm file certificates of insurance with the Agency.

Nonetheless, this court is aware of the possible windfall which would benefit Engineering–Science's excess carriers if there is a prohibition on subrogation. Plaintiffs further contend that such a prohibition would actually indirectly prejudice the Agency and Peter Kiewit & Sons. They suggest that subrogation would preserve the Agency and general contractor's loss experience, which in turn would affect the rates charged to them for future insurance policy.

Yet, defendants may point to similar possible prejudices. A loss in a subrogation action may affect their credit. Like the Agency and the other contractors, they may be exposed to significant expenses and risk of loss which would appear in future ratings and premiums. The insured might even have to accept the counsel who the insurance carrier choses to defend the insured. The possibilities seem endless. Thus, a test which involves balancing prejudices among these parties cannot be fruitful in actions such as these, and the broad injustices outlined in *Murray Plumbing* must stand to prohibit subrogation in the instant case.

## Conclusion

Peter Kiewit & Sons hold a builders risk insurance policy with National Union for liability arising out of damage to the outfall at Monterey Bay. It is undisputed that Engineering–Science, Inc. also has a 1 million dollar errors and omissions policy with National Union which would cover their liability stemming from design of the outfall project. Thus, National Union, as a subrogated insurer of its policyholders (the Agency and Peter Kiewit & Sons) has sued another of its policy holders (Engineering–Science), whom it has insured against the very liability for which it seeks recovery in its complaint in an amount in excess of the policy limits. As a matter of law, public policy concerns prohibit such a suit. Accordingly, the court grants the defendants' motion for summary judgment and denies plaintiffs' motion for partial summary judgment.

Defendants also presented the issue of whether they are coinsured under the builders risk policy issued to Peter Kiewit & Sons. Having ruled on the separate policy held by Engineering–Science, the court need not address this second issue.