99 F.3d 1148
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles WHITE, an individual, doing business as Precision
Painting, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE CO., Defendant-Appellee.
 No. 95-55824.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 9, 1996.
Decided Oct. 18, 1996.
 
 1
 Before: REINHARDT, LEAVY, Circuit Judges, and COYLE[1], District Judge.
 
 
 2
 MEMORANDUM*
 
 OVERVIEW
 
 3
 Charles White, dba Precision Painting, ("White") appeals from the district court's summary judgment in favor of Allstate Insurance Company ("Allstate"). White's diversity action alleges malicious prosecution, breach of the implied covenant of good faith and fair dealing, abuse of process, and breach of contract. The allegations arise out of the filing of a lawsuit against White by White's insurer, Allstate, to recover on a subrogation claim relating to a fire that destroyed a house White was painting. Allstate paid the owners of the house and alleged that the fire resulted from White's negligence. Upon review of the oral and written record, this Court affirms the district court for the reasons stated herein.
 
 
 4
 First, the district court did not err in ruling that California Civil Code § 47(b) absolutely bars any action for tortious breach of the implied covenant of good faith and fair dealing based on an insurer's bad faith in suing its own insured in subrogation on a covered claim. The California Supreme Court held that the only tort claim that can be based on litigation conduct or the filing of litigation is a claim for malicious prosecution. See Cal.Civ.Code § 47(b); Silberg v. Anderson, 50 Cal.3d 205, 216 (1990).
 
 
 5
 Second, this Court affirms the district court's finding that White could not state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing in contract based on Allstate's pursuit of the subrogation action against White. There was no contractual provision in the policy and no industry-wide practice against suing an insured. California law bars an insurance carrier from bringing a subrogation action against one of its policyholders in two cases: (1) where the insured is also covered under the same policy which gave rise to the insurer's subrogation rights; or (2) where the insurance carrier has insured the policyholder for the very same liability for which it seeks recovery. Here, the policies are different. The risks covered are also different: White held an automobile policy providing third-party liability coverage for accidents "resulting from ownership, maintenance or use of a covered auto." Conversely, the Arnold's homeowner's policy provided first-party coverage for "sudden and accidental physical loss to the property described in the dwelling protection coverage...." See National Union Fire Ins. v. Engineering-Science, Inc., 673 F.Supp. 380, 381 (N.D.Cal.1987), aff'd, 884 F.2d 1208 (9th Cir.1988).
 
 
 6
 White did not have viable claims based on Allstate's failure to pay any of White's defense fees, Allstate's refusal to appoint independent counsel for White, or Allstate's attempt to control the defense of the subrogation action. Allstate accepted the tender of White's defense and agreed to pay 20% of the defense costs. These fees were actually paid, as a set-off against the amount Safeco was required to pay Allstate. White received a full and complete defense from attorneys assigned by Safeco, who were adversaries of Allstate. Allstate did not attempt to control the litigation, but merely requested to receive status reports and to be included in discussions of the direction in which the litigation was proceeding.
 
 
 7
 White did not suffer any damages as a result of Allstate's alleged breaches of contract and/or breaches of the implied covenant of good faith and fair dealing. White showed no evidence to support his claims of damages from emotional distress, lost business revenue, or liability for attorneys' fees.
 
 
 8
 Finally, the district court properly found that Allstate had probable cause, as a matter of law, to pursue the underlying subrogation. Although the Court of Appeal ultimately disagreed with the state trial court judge and reversed its denial of summary judgment in the subrogation action, the merit of the claim was clearly debatable. Therefore, the plaintiff had probable cause to file the subrogation action. The district court was correct in dismissing White's claim for malicious prosecution. See Sheldon Appel Co. v. Albert & Oliker, 47 Cal.3d 863, 871 (1989).
 
 FACTS AND PROCEDURAL HISTORY
 
 9
 In January 1989, plaintiff-appellant White, the owner of Precision Painting, was hired by the Arnold family to paint their home. A fire in March 1989 destroyed the Arnold residence. The Fire Department determined that the cause of the blaze was the spontaneous combustion of rags saturated with linseed oil. The rags had been left in White's trailer which was parked in the east bay of the double garage attached to the Arnold home.
 
 
 10
 Allstate was the insurance carrier for both the Arnolds and White. The Arnolds were covered under an Allstate homeowner's policy. White was covered under a commercial automobile insurance policy issued by Allstate with limits of $100,000. White also had a comprehensive general liability policy with limits of $500,000 for his painting company. That comprehensive general liability policy was issued by Safeco, not a party to this action.
 
 
 11
 The Arnolds submitted a claim to Allstate under their homeowner's policy. Allstate paid the Arnolds $306,440.20 under that homeowner's policy. As a result, Allstate, as the issuer of the homeowner's policy, became subrogated to the Arnolds' rights against White. Allstate sought to recover against both White's Allstate automotive policy and White's Safeco general liability policy.
 
 
 12
 Allstate exercised subrogation rights under Arnolds' homeowners policy and recouped part of the loss from itself. Allstate, again as the Arnolds' homeowners carrier, next presented its claim for subrogation to Safeco. Based on proportionate policy limits, Safeco and Allstate reached a tentative oral agreement that Safeco would pay 5/6 and Allstate would pay 1/6 of the loss. C.R. 19, p 8. On January 28, 1992, the adjuster for Allstate's business/liability policy issued a check to Allstate's subrogation department for $52,137.33, representing 1/6 of the amount paid by Allstate to the Arnolds under the homeowner's policy. C.R. 19, p 9. Allstate issued a release on a standard form modified by certain language. On the line indicating parties, the release agreement names "Allstate Insurance and Charles White dba, Precision Painting, Under Policy # 050171975 for their proportionate share ..." The release discharged plaintiff from "any and all rights, claims, demands, and damages of any kind, known or unknown, existing or arising in the future, related to the accident." According to Allstate, this was only intended to release White from Allstate's proportionate share of the damage caused to the Arnolds. C.R. 19, p 10; C.R. 18, p 10.
 
 
 13
 Subsequently, a dispute arose between Allstate and Safeco as to the tentative liability sharing agreement. Apparently, Safeco believed it had no obligation to pay under the terms of the release.
 
 
 14
 On February 7, 1992 ten days after signing the release, Allstate, as subrogee of the Arnolds, instituted a subrogation action in state court against White, as holder of the Safeco policy, to recover the remainder of the monies paid to the Arnolds. Allstate alleged that White negligently left oily rags on the Arnolds' property which spontaneously combusted. Prior to filing the action, Allstate's adjuster explained to White that although the subrogation action would name him as defendant, its purpose was to recover from Safeco the amount it was obligated to pay under its policy. C.R. 19, pp 13-14. Allstate, as White's automotive insurer, admitted it owed White coverage and a duty to defend the subrogation. Accordingly, Allstate offered to pay 20% of White's defense costs. C.R. 1, pp 15-16.
 
 
 15
 However, the two insurers disagreed about an appropriate methodology for sharing the costs of White's defense, in addition to the dispute about sharing the liability. Allstate and Safeco agreed to submit their dispute to binding arbitration. The arbitrator found that Allstate was required to pay 1/6, or 16.67% of the defense costs. The arbitrator also found that Safeco was a primary insurer and therefore obligated to pay 5/6 of White's defense costs. C.R. 72, 7-10. The percentages for sharing defense costs reflected the ratio of coverage afforded by the Allstate and Safeco policies, $100,000 and $500,000, respectively.
 
 
 16
 In the state subrogation action, Allstate argued that the release agreement which was executed did not provide a full release, but only a partial release from liability. White made a motion for summary judgment which was denied. The trial court found a triable issue of material fact as to whether the parties intended to execute a full release on behalf of White.
 
 
 17
 On appeal, the California Court of Appeal for the Fourth Appellate District granted White's petition for a writ of mandate and ordered the trial court to vacate its denial of summary judgment. The court found that a "clear and unambiguous" release agreement fully discharged White from being sued on the matter. The court also noted that the language regarding "proportionate share" had no bearing on the fact that the agreement fully released White from any further claims. Finally, the court indicated that it would express no opinion on Allstate's ability to pursuing a direct action against Safeco for failing to pay its proportionate share.
 
 
 18
 Allstate maintains, however, that it did not sue Safeco directly because it was advised by its outside counsel that Safeco could not be sued directly in a subrogation action. C.R. 18, p 11. This was because Safeco had a clause in its insurance policy which provided that Safeco was not obligated to pay third party claims unless and until a judgment was obtained against its insured. C.R. 1, Ex. 2. Allstate's counsel advised Allstate's adjuster that it was proper to name Safeco's insured, White, as the defendant in a subrogation action seeking to force Safeco to pay its proportionate share of the damage caused by White. C.R. 18, p 11.
 
 
 19
 On May 16, 1994, White filed in district court the complaint in this action against Allstate alleging malicious prosecution and breach of the implied covenant of good faith and fair dealing[2]. (C.R. 1). On August 22, 1994, Allstate filed a motion to dismiss the entire complaint with prejudice. On September 2, 1994, White filed a motion for an order specifying issues that exist without substantial controversy. (C.R. 6, 7, 8, 9, 10, 11). In its October 13, 1994 order on both motions, the district court denied in part and granted in part Allstate's motion to dismiss and denied the motion for an order specifying issues on the grounds that it was premature. (C.R. 10).
 
 
 20
 The court dismissed the malicious prosecution claim. The court also dismissed two of the three portions of the claim for breach of the implied covenant of good faith and fair dealing. The portions dismissed were based upon (1) Allstate's failure to provide independent counsel and (2) Allstate's pursuit of a subrogation action against its own insured. The court reasoned that such an action was absolutely privileged by the litigation privilege in the California Civil Code § 47(b). The court denied the third portion of the motion to dismiss the bad faith claim based upon Allstate's failure to pay attorney's fees for White's defense of the subrogation action because it found a question of material fact.
 
 
 21
 In its order dated January 6, 1995, the district court denied White's motion for reconsideration and denied in part White's motion to amend the complaint. (C.R. 45). The district court found that White could not state a claim for abuse of process again due to the litigation privilege. (C.R. 45 at p. 7, 11, 13-16).
 
 
 22
 On January 20, 1995, Allstate filed a motion for summary judgment on the one claim for breach of the implied covenant of good faith and fair dealing and the claim for breach of contract. (C.R. 48). On March 17, 1995, the court granted the motion for summary judgment in its entirety. (C.R. 71 and 72). Judgment was entered on the motion for summary judgment on March 20, 1995. (C.R. 730. On March 31, 1995, White filed a timely motion for reconsideration and a motion for a new trial under Rules 59 and 60. (C.R. 76). On May 17, 1995, the district court denied the motion for reconsideration and issued an order stating "this order terminates this action." (C.R. 86). Thereafter, on May 18, 1995, the court entered judgment terminating the action. (C.R. 87). On June 8, 1995, White filed a timely notice of appeal initiating the instant appeal. (C.R. 88).
 
 JURISDICTION
 
 23
 Jurisdiction is based upon diversity of citizenship under 28 U.S.C. §§ 1332 and 2201. The district court's judgment and order denying appellant's motion for reconsideration and for a new trial pursuant to Fed.R.Civ.P. 59 is final and appealable. Judgment was entered in favor of appellee Allstate and against appellant White. On March 31, 1995, White filed a timely motion for reconsideration and a new trial. This motion was denied on May 17, 1995, and judgment was entered on May 18, 1995. Timely notice of appeal was filed on June 8, 1995, pursuant to Fed.R.App.P. 4(a).
 
 STANDARD OF REVIEW
 
 24
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996); Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Jesinger, 24 F.3d at 1130. The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Warren, 58 F.3d at 441.
 
 
 25
 A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995). Review is limited to the contents of the complaint. Argabright v. United States, 35 F.3d 472, 474 (9th Cir.1994). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. National Wildlife Federation v. Espy, 45 F.3d 1337, 1340 (9th Cir.1995). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995).
 
 DISCUSSION
 
 26
 I. The Bad Faith Claim is Barred by the Litigation Privilege in California Civil Code § 47(b).
 
 
 27
 White is inconsistent in arguing sometimes that his claim sounds in contract and sometimes in tort. The district court determined that the claim was one in tort, but analyzed it both ways, nevertheless, as discussed below.
 
 
 28
 In analyzing White's bad faith claim as one which sounds in tort, the district court properly found that the litigation privilege articulated in California Civil Code § 47(b) precludes White from filing a bad faith claim based on Allstate's filing of the subrogation action. Civil Code § 47(b) provides, "A privileged publication or broadcast is one made ... 2. in any (1) legislative or (2) judicial proceeding, ..." Although originally restricted to defamation actions, the privilege is now applied to all torts except malicious prosecution. The California Supreme Court held that the only tort claim that can be based on litigation conduct or the filing of litigation is a claim for malicious prosecution. Silberg v. Anderson, 50 Cal.3d 205, 216 (1990). The privilege is absolute, and is not affected by malice or other bad motive of the speaker. Id. See also, Ribas v. Clark, 38 Cal.3d 355, 364 (1985) (tortious nature and purpose of defendant's actions does not negate privilege). Silberg explained that the absolute privilege for communications made in the course of judicial proceedings must satisfy four criteria. The communication must be (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the object of the litigation; and (4) bear some connection or logical relation to the action. Id. at 212. "Further, [the privilege] applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. Id. (citations omitted). This would include the filing of a lawsuit.
 
 
 29
 The district court found that the claim was one in tort, not in contract. It based this finding on its analysis of the complaint, which sought punitive damages and damages for emotional distress. The district court correctly noted that the type of damages claimed are not compensable in a contract action, only in tort. Therefore, it concluded that White's was a tort claim. Applied Equipment Corp. v. Litton Saudi Arabia Ltd, 7 Cal.4th 503, 516 (1994). Accordingly, the district court did not err in ruling that California Civil Code § 47(b) absolutely bars any action for tortious breach of the implied covenant of good faith and fair dealing. This Court affirms the district court.
 
 
 30
 White argues that the district court erred in declining to follow the California Supreme Court decision in Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566 (1973). White asserts that Gruenberg stands for the proposition that Civil Code § 47 does not insulate an insurer from liability for breach of the implied covenant of good faith and fair dealing, whether in contract or tort, based upon litigation conduct. This Court does not accept White's argument for the following reasons. In Gruenberg, the insured alleged the existence of a scheme involving numerous acts in addition to the filing of the lawsuit. In particular, the plaintiff alleged that the defendant insurance companies wilfully and maliciously entered into a scheme to deprive him of the benefits of the fire policies issued to him. In that scheme, the insurance companies allegedly encouraged criminal charges by falsely implying that the plaintiff had a motive to commit arson. Knowing plaintiff would not appear for an examination during the pendency of criminal charges against him, the insurance companies used his failure to appear as a pretense for denying liability under the policies. The Gruenberg court allowed the insured to pursue his bad faith claim because the insurer's conduct "transcended" the mere filing of a lawsuit. Id. at 575-76 n. 5. In Gruenberg, the court simply held that, where there is conduct in addition to the filing of a lawsuit, and that conduct is sufficient to support a claim for bad faith, the plaintiff may proceed with the action. The filing of the lawsuit itself, however, is privileged, and therefore, not sufficient to support a claim for bad faith unless there is some other conduct which independently supports such a claim. Id.
 
 
 31
 In the case at bar, White refers to a scheme to breach the implied covenant of good faith and fair dealing and asserts that Allstate is not privileged to engage in such a scheme. However, White provides no facts which support the existence of that scheme. Nor does White ever present this alleged scheme as a reason for permitting a bad faith action. In the case at bar, there are no additional circumstances which would "transcend" the privilege afforded to Allstate's act of filing a lawsuit. Accordingly, this Court finds that the litigation privilege of section 47(b) and Silberg holds and that Gruenberg is inapplicable. Therefore, this court affirms the district court's finding that White's bad faith claim is barred by section 47(b).
 
 
 32
 II. The District Court did not err in Finding that White could not state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing based upon Allstate's pursuit of the subrogation action against White.
 
 
 33
 In its March 17, 1995 order, the district court also addressed White's claim for breach of the implied covenant of good faith and fair dealing based upon Allstate's pursuit of the subrogation action against White as one sounding in contract. The district court granted Allstate's motion for summary judgment on the grounds that the rule prohibiting an insurer from suing its own insured in subrogation on a covered claim (the "antisubrogation rule") did not apply to the underlying subrogation action. (C.R. 72 p. 6.) The district court found that the antisubrogation rule only applied in situations in which the insured is a co-insured or an additional insured under the subrogating insurance policy or when the policies issued to the subrogor and the defendant in the subrogation action provided for "identical coverage for the loss." Id. In making its finding, the district court relied upon the only two cases applying California law with respect to the anti-subrogation rule, St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp., 65 Cal.App.3d 66, 74 (1976) and National Union Fire Ins. v. Engineering-Science, Inc., 673 F.Supp. 380, 381 (N.D.Cal.1987), aff'd, 884 F.2d 1208 (9th Cir.1988).
 
 
 34
 Subrogation is an equitable doctrine which entitles an insurer to "stand in the shoes" of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse. Subrogation focuses on the insurer's rights against those who partially or entirely caused the harm for which the insurer must compensate its insured. When liability is laid against an insured litigant, any rights that litigant may have against others for all or a share of that liability become the rights of the insurer. An insurer, however, has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. See Couch, Insurance 2d § 61:136 (rev'd ed.). Public policy requires this exception to this general rule both to prevent the insurer from passing the incidence of loss to its own insured and to guard against the potential for conflict of interest that may affect the insurer's incentive to provide a vigorous defense for its insured.
 
 
 35
 In the case at bar, the district court held that the anti-subrogation policy did not apply for the following reasons:
 
 
 36
 Here, the policy in question is the Arnold's homeowner's policy with Allstate. White is not an insured, co-insured or additional insured on this policy. Furthermore, although both insurance policies were issued by Allstate, White's commercial automobile policy does not provide coverage identical to that of the Arnold's homeowner policy. Thus, the court finds that Allstate's subrogation action against White was not barred by the rule against subrogation. Accordingly, the court holds that Allstate did not breach the implied covenant of good faith and fair dealing by instituting the subrogation action against White.
 
 
 37
 White argues that the district court is in error for the following reasons: First, White argues that both of the Allstate policies at issue in the underlying subrogation action provided identical coverage for the loss since they both provided "property damage" coverage. Second, White argues that the district court misread National Union Fire Ins. Co. v. Engineering Science, 673 F.Supp. 380, aff'd, 884 F.2d 1208 (9th Cir.1989) in relying on that holding in its order.
 
 
 38
 White seeks to apply the "anti-subrogation rule" too broadly. There is no contractual provision in the insurance policy which precludes Allstate from filing a subrogation action against one of its insureds. Nor was there any evidence before the district court of an industry-wide policy against such action. California law precludes suing an insured only where the insured is also insured under the policy which gave rise to the insurer's subrogation rights or a policy that covers essentially the same risks as that policy. The fact that White coincidentally happened to have an automobile liability policy issued by Allstate which covered a portion of White's liability for the Arnolds' loss does not preclude Allstate from seeking subrogation for that portion of the loss which was covered by another insurer, Safeco.
 
 
 39
 The parameters of the antisubrogation rule are explained in National Union Fire Ins. v. Engineering-Science, Inc., 673 F.Supp. 380, 381 (N.D.Cal.1987), aff'd, 884 F.2d 1208 (9th Cir.1988). In National Union, the owner of a construction project required the general contractor to obtain a builder's risk policy. 673 F.Supp. at 381. The owner also required the subcontractor to obtain liability insurance for its work on the project. Id. at 383-84. Both the general and the subcontractor obtained their respective liability policies from National Union. When it was discovered that the subcontractor negligently caused damage on the project, National Union paid out $4 million under the policy issued to the general contractor. National Union then filed a subrogation claim against the subcontractor. The court held that National Union had no subrogation rights against the subcontractor because the policy issued to the subcontractor covered "the very liability" for which the general contractor's policy was issued. National Union, 673 F.Supp. at 384. In other words, the applicable coverage under the policy of the general contractor, the subrogor, and the policy of the subcontractor was the same: third-party liability coverage for negligent work performed on the project.
 
 
 40
 The National Union court acknowledged that there are limited cases in which an insurance carrier can bring a subrogation claims against an insured. These are limited to cases "where the insurer covers the insured for a liability different from the one upon which the carrier would seek recovery." Id. at 382. The National Union court explained, "Surely if National Union had covered [the subcontractor] for its worker's compensation insurance it would not be precluded from subrogating against [the subcontractor] in this case." Id.
 
 
 41
 In the case at bar, White argues that the anti-subrogation rule should be applicable because White's automobile liability policy covers the same risks as the Arnolds' homeowner's policy. That argument is not valid because the policies, in fact, cover very different risks. White's automobile policy provides third-party liability coverage for accidents "resulting from ownership, maintenance or use of a covered auto." C.R. 1, Ex. 1, p. 28. The Arnold's homeowner's policy provides first-party coverage for "sudden and accidental physical loss to the property described in the dwelling protection coverage...." C.R. 20, Ex. A, p. 8. These are two distinctly different types of policies covering different risks. White's assertion that the Arnold's claims against Allstate as its homeowner's carrier are the same risks covered by the automobile policy are not supported by the terms of the policies. There is no ambiguity in the coverage provided by either policy. Since determination of coverage of the insured is dispositive of the applicability of the antisubrogation rule, there is no risk, in the case at bar, that either carrier would avoid any obligation to provide coverage to their insureds. The real parties at interest here are the insurance carriers, not White himself. Moreover, no public policies are violated if Allstate is permitted to sue White to reach the policy issued by Safeco. Accordingly, the court finds that the antisubrogation rule is inapplicable in the case at bar.
 
 
 42
 The other case upon which the district court relied was St. Paul Fire & Marine, 65 Cal.App.3d at 75-76. In St. Paul Fire & Marine, the court held that the insurer was barred from subrogating against its own insured because the subrogor and the defendant in the subrogation action were both insured under the same policy, a builder's risk policy issued by St. Paul. Id. Accordingly, St. Paul Fire & Marine is distinguished from the case at bar on the grounds that both parties in that case were insured under the same policy.
 
 
 43
 Finally, one additional aspect of this case renders the antisubrogation rule inapplicable. Allstate brought the underlying action to recover money from another insurance company, not from its insured. It was undisputed that the reason the underlying action was filed was solely to recover the benefits available under the Safeco policy held by White. C.R. 19, at pp 12-14. Allstate's outside counsel advised Allstate that it could not bring a subrogation action directly against Safeco. C.R. 18, p 11. The Safeco policy, like most liability insurance policies, contains a "no action" clause which prohibits a direct action against the insurer by a third party. That clause provides that Safeco will not be obligated to pay a third party claim until a judgment has been obtained against Safeco's insured. C.R. 1, Ex. 2, pp. 6-7. Applying California law, the National Union court pointed out that one of the public policy motivations behind the antisubrogation rule was to prevent the insurer from "pass[ing] the incidence of loss, at least in part, from itself to its own insured and thus avoid the coverage which the insured purchased." National Union, 673 F.Supp. at 383 (citations omitted). This type of risk is clearly not present here, as Allstate intended a recovery from Safeco. White never sustained any potential liability. Therefore, in a case of one insurer seeking to recover from another such as the case at bar, the public policy risks that the antisubrogation rule was designed to protect against are not present. Accordingly, the antisubrogation rule does not apply.
 
 
 44
 Even if Allstate were barred by either law or custom from filing a subrogation action against White to recover sums owed by Safeco, there are several reasons why Allstate's filing of the subrogation action could not form the basis of a claim for breach of the covenant of good faith and fair dealing. First, the filing of the subrogation action did not deprive White of any benefits to which he was entitled under the express terms of the policy. The very essence of a claim for breach of the implied covenant is that the insurer's conduct has deprived the insured of benefits due under the insurance policy contract. Waller v. Truck Ins. Exchange, 11 Cal.4th 1, 35-36 (1994); Silberg, 11 Cal.3d at 460. In the present case, the evidence established that White was not denied any benefits to which he was entitled under his Allstate policy. Both the damages caused by White and his defense costs were paid for entirely by White's insurers. White has not challenged that finding in his opening brief. As both the arbitrator and the district court found, Allstate was obligated to pay 1/6 of the damage caused by White and 1/6 of his defense costs in the subrogation action. Safeco was obligated to pay the remaining 5/6 of the damages and defense costs. Accordingly, White cannot prevail on his claim for breach of the covenant of good faith and fair dealing because he was not deprived of any of the benefits to which he was entitled under the policies in question. Waller, 11 Cal.4th at 35-36.
 
 
 45
 White also asserts that Allstate's filing of the subrogation claim after it signed a release of claims against White was a breach of the insurance policy's covenant of good faith and fair dealing. That assertion is also meritless. The release was a separate contract. The complaint in this action does not allege that Allstate breached the release. An alleged breach of a contract Allstate subsequently entered into does not constitute a breach of the terms of a prior contract, the insurance policy, which did not include such a release or a clause prohibiting the filing of a subrogation claim. Here, the express terms of the policy do not include an agreement that Allstate would not file a subrogation claim against White. As a matter of law, such a term cannot be implied if there is no such express term in the policy. Racine & Laramie, Ltd. v. Department of Parks and Rec., 11 Cal.App.4th 1026, 1032 (1992). A bad faith claim cannot be based on obligations that are alleged to exist outside of the express terms of the insurance contract. Gibson v. Government Employees Ins. Co., 162 Cal.App.3d 441, 448 (1984). In the present case, since there is no express term in the policy precluding Allstate from filing a subrogation action against White, such a term cannot be implied under the guise of the covenant of good faith and fair dealing. Moreover, White could not base a tort claim on the breach of an ordinary contract. See Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-93 (1988).
 
 
 46
 Furthermore, there can be no breach of the covenant of good faith and fair dealing since there is at least a "genuine issue" as to whether Allstate's conduct was proper. Under California law, an insurer breaches the covenant of good faith and fair dealing only where it acts "unreasonably." Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1151 (1990). Therefore, even if it is ultimately determined that an insurance company's conduct was contrary to law, the insurance company cannot be held to have breached the covenant of good faith and fair dealing if there was a "genuine issue" as to whether its conduct was proper. Lunsford v. American Guarantee & Liability Ins. Co., 18 F.3d 653, 656 (9th Cir.1994). In the case at bar, there was a valid basis for Allstate to believe that it was entitled to file the instant lawsuit and did not act unreasonably. Both the state court trial judge in the subrogation action and the federal district court in this action held that the antisubrogation rule did not bar Allstate from filing the subrogation action. C.R. 20, Ex. B; C.R. 72, p. 6. Accordingly, there was a "genuine issue" as to whether the insurer's conduct was proper, meaning Allstate's conduct was not unreasonable. This serves as a bar to an action for breach of the implied covenant of good faith and fair dealing.
 
 
 47
 III. The district court correctly found that the manner in which Allstate handled White's request for a defense could not constitute a breach of the covenant of good faith and fair dealing.
 
 
 48
 White contends that Allstate breached the insurance policy's covenant of good faith and fair dealing by: (1) agreeing to pay only 20% of the fees and costs incurred by the defense counsel provided to White by Safeco; (2) failing to actually pay any of White's defense costs; (3) failing to provide White with independent counsel; and (4) attempting to control the defense of the subrogation action.
 
 
 49
 Allstate counters by pointing out that Allstate accepted the tender of White's defense and agreed to pay 20% of the defense costs. C.R. 1, pp 15-16; C.R. 50, Ex. 4; C.R. 58, pp 7-11. As to White's assertion that Allstate never actually paid the defense costs, the facts indicate full payment. The two insurers became embroiled in a dispute over the costs because Safeco attempted to have Allstate pay 50% of the defense costs. The insurers agreed to submit the dispute to binding arbitration. C.R. 56, Ex. M. The arbitrator ruled in favor of Allstate, finding that Allstate was obligated to pay only 1/6 of White's defense costs. The arbitrator also determined that Safeco was obligated to reimburse Allstate for 5/6 of the payments made under White's Allstate automobile liability policy. Thereupon, the amount that Allstate owed Safeco was set-off against the amount Safeco was required to pay Allstate. The net result was that Safeco owed Allstate $24,000. Therefore, the assertion that Allstate refused to pay or failed to pay any of White's defense costs is not valid. After the arbitration, Allstate did pay the 20% of the defense costs it was required to pay, in the form of a set-off.
 
 
 50
 White's assertion that Allstate breached its obligation to provide independent counsel is also not valid. White received a full and complete defense from attorneys assigned by Safeco, the adversary of Allstate. There was no evidence that White's attorneys were controlled by or were loyal to Allstate. It cannot be said that White did not receive the assistance of independent counsel, thereby negating White's assertion of a breach of the covenant of good faith and fair dealing.
 
 
 51
 White's claim that Allstate attempted to control the litigation is not supported by fact. Apparently, Allstate's adjuster, as part of its agreement to pay a share of the defense fees, required the counsel to (1) provide the same reports on the status of the litigation that Safeco was receiving; and (2) be involved in the attorneys' discussions of the direction in which the litigation was proceeding. White has mischaracterized these demands as an attempt to control the litigation. However, even under California's "Cumis counsel" statute, Cal.Civ.Code § 2860(d), under which an insurer is required to pay for independent counsel when there is a conflict of interest between the insurer and insured, the insurer is entitled to obtain the same information that Allstate requested here from the independent counsel for the insured. Accordingly, White's claims that the manner in which Allstate handled White's request for a defense could not constitute a breach of the covenant of good faith and fair dealing. Therefore, the Court affirms the district court's finding that there was not a breach of the implied covenant of good faith and fair dealing.
 
 
 52
 IV. The district court was correct in finding that White did not sustain damages.
 
 
 53
 The district court found that White had sustained no damage. White contends that he suffered emotional distress from Allstate's conduct in breaching his insurance contract and also breaching the implied covenant of good faith and fair dealing. C.R. 58, p 14. White cites cases to show that contracts of liability insurance are the types of contracts that when breached may result in liability for emotional distress damages proximately caused by the breach. See State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co., 9 Cal.App.3d 508, 527-28 (1970).
 
 
 54
 White also asserts that he suffered economic damages from Allstate's conduct in breaching its contract and breaching the implied covenant of good faith and fair dealing. He claims these damages are lost revenue estimated at $9,372 and $30,984 for 1992 and 1993, respectively. C.R. 58, at p 17-18.
 
 
 55
 Finally, White claims attorneys' fees in defending the underlying action. The district court found that the defense fees are not recoverable because they were paid by White's other insurer, Safeco, and not by White personally. White argues that the fact that Safeco paid them is irrelevant, and claims that the collateral source rule would apply here. White cites Helfiend v. Southern Cal. Rapid Transit Dist., 2 Cal.3d 1, 9-10 (1970) for the proposition that the collateral source rule prohibited one insurer which has breached its duty to defend an insured from garnering the benefits of the insured's prudence in paying years of policy benefits to another insurer.
 
 
 56
 White's claims of damages are without merit. As to the attorneys' fees, Allstate did reimburse Safeco entirely for the portion of White's defense costs which it was obligated to pay. White never became obligated in any way for attorneys' fees for the defense of the underlying action. Furthermore, White has not identified any other damage he sustained as a result of the dispute between Allstate and Safeco over White's defense. White's claim of lost business is purely speculative and not supported by any evidence. As to the emotional distress claim which allegedly resulted from White's fear that his Safeco policy would not be sufficient to cover a judgment against him in the subrogation action, White does not cite any basis whatsoever for his belief that Safeco's policy would not be sufficient. The Safeco policy had limits of $500,000, which was substantially more than the $254,000 which Allstate sought to recover in the subrogation action. C.R. 8, Ex. A. Accordingly, this Court finds the claims of damages are unsupported and without merit.
 
 
 57
 V. The district court was correct in dismissing White's claim for malicious prosecution because White cannot establish that the underlying subrogation action was brought without probable cause or was terminated in favor of White.
 
 
 58
 The district court dismissed White's malicious prosecution claim on the grounds that undisputed facts established that there was probable cause for Allstate to pursue a subrogation action. C.R. 30, at pp. 5-6. To prevail in a malicious prosecution action, the plaintiff must prove that the underlying action: (1) was commenced at the direction of the defendant; (2) resulted in a favorable legal termination in favor of the plaintiff; and (3) was brought without probable cause. Sheldon Appel Co. v. Albert & Oliker, 47 Cal.3d 863, 871 (1989).
 
 
 59
 White asserts that there are two grounds for reversing the district court: (1) the state Court of Appeal subsequently reversed the trial court's finding that there was a triable issue of fact; and (2) the anti-subrogation rule barred Allstate from filing a subrogation claim as a matter of law. Allstate has countered with arguments that (1) there were undisputed facts before the district court establishing probable cause to file the subrogation action; (2) the anti-subrogation rule did not preclude Allstate from filing the subrogation action against White; and (3) White did not achieve a favorable termination because the subrogation action was settled.
 
 
 60
 Under California law, probable cause exists when "any reasonable attorney would have thought the claim tenable...." Sheldon Appel, 47 Cal.App.3d at 886. The California Supreme Court established this as a purely objective standard. Id. at 885. Here, the district court noted in dismissing White's malicious prosecution claim that Allstate had probable cause to file the subrogation action. C.R. 30, at 5. The trial court found that there was sufficient evidence to require a jury to decide whether Allstate was entitled to subrogation. C.R. 20, Ex. B. The fact that the state Court of Appeal subsequently reversed the trial court does not negate the district court's finding that there was enough evidence to support the finding that the case presented a valid question of fact. Although the Court of Appeal disagreed with the trial court judge, the fact that there was disagreement establishes that the issue was at least "fairly debatable." California courts have held that contrary rulings of a Court of Appeal on the validity of a statute of limitations defense "establish that a genuine question existed" and thereby support a probable cause claim. Drasin v. Jacoby & Myers, 150 Cal.App.3d 481, 484 (1984).
 
 
 61
 White also contends that Allstate lacked probable cause for its subrogation claim because the antisubrogation rule bars an insurer from filing a subrogation action against its insured. This issue has been discussed above. Moreover, even if the antisubrogation rule did bar such a claim, the applicability of the rule to the facts of this case was "fairly debatable." The issue was "fairly debatable" because both the state court trial judge and the district court judge held that the antisubrogation rule did not bar Allstate's subrogation action. That would be enough to establish probable cause.
 
 
 62
 Finally, White cannot prevail on a malicious prosecution claim because the subrogation action was settled rather than "favorably terminated." "[A] resolution of the underlying action that leaves some doubt as to the defendant's innocence or liability is not a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff. Thus, a dismissal resulting from negotiation, settlement, or agreement is generally not deemed a favorable termination of the proceedings." Villa v. Cole, 4 Cal.App.4th 1327, 1335 (1992) (emphasis in original). In the present case, the subrogation action was terminated by a settlement agreement while the case was still pending. C.R. 17, pp 4-6. After the Court of Appeal ruled in the subrogation action, but within the time in which Allstate could have sought review by the California Supreme Court, the parties agreed to settle the litigation. Id. White agreed to waive costs in return for Allstate's agreement not to seek review by the California Supreme Court. Id. The parties also agreed that the judgment entered would have "no force and effect." Id. Therefore, the judgment could not have the effect of being a favorable termination. The litigation was terminated pursuant to the parties' agreement. Accordingly, White cannot establish that there was a "favorable termination" of the subrogation action. For all of the reasons discussed above, this Court affirms the district court's dismissal of the claim for malicious prosecution.
 
 CONCLUSION
 
 63
 This Court affirms the district court holding in its entirety for the reasons stated. The scope of the antisubrogation rule is not so broad as to apply here. The action against White is not precluded by the antisubrogation rule because the risks covered by the homeowner's policy are different from the risks covered by the automobile policy.
 
 
 64
 AFFIRMED.
 
 
 
 [1]
 Honorable Robert E. Coyle, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [2]
 Allstate points out that there is no provision in White's Allstate automotive policy which prevents Allstate from filing such a subrogation action against one of its insureds. C.R. 1, Ex. 1. Nor was there any evidence of an industry-wide or firm-wide policy against doing so. White concedes that he tendered his defense to both Allstate and Safeco, and that both Allstate and Safeco accepted the tender of the defense. C.R. 1, at pp 15-16