[Civ. No. 48116. Second Dist., Div. Three. Dec. 20, 1976.]

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, Plaintiff and Appellant, v.
MURRAY PLUMBING AND HEATING
CORPORATION et al., Defendants and Respondents.

68

**COUNSEL**

Cummins, White & Breidenbach, Bruce C. Gridley and W. F. Rylaarsdam for Plaintiff and Appellant.

Veatch, Snow, Carlson, Dorsey & Quimby, Raymond J. Mosher, Herbert F. Blanck, Schell & Delamer, Mark B. Pepys, Horgan & Robinson, Steven L. Anderson, Yusim, Cassidy, Stein & Hanger, Charles S. Fonarow, Haight, Lyon, Smith & Dickson and Roy G. Weatherup for Defendants and Respondents.

**OPINION**

**ALLPORT, J.**—In a first amended complaint for property damage plaintiff St. Paul Fire and Marine Insurance Company, a corporation, as insurer of C. H. Leavell & Company, a corporation, seeks reimbursement for sums paid by it for water damage to property located in or near the basement of the United States Post Office, Cafeteria and Federal Office Building at Wilshire and Sepulveda Boulevards in West Los Angeles, which damage occurred while the building was under construction.[1] At the time of the loss Leavell was general contractor and Murray Plumbing and Heating Corporation, a corporation, Rockwin Prestressed Stone, a corporation, and Barnard Engineering Company, a corporation, were subcontractors engaged in the construction project. Progressive Transportation Company, a corporation, and Russell Back-Hoe Rental, Inc., a corporation, were subcontractors of Rockwin and Murray respectively on the same project.

---

[1]Although Leavell also appears as a party plaintiff, its action to recover sums not covered by insurance was settled and dismissed.

It was alleged that, as a result of negligence, strict liability, breach of warranty and breach of contract by defendants, a four inch cast iron pipe broke causing extensive flooding and that:

"As a direct and proximate result of the carelessness, negligence and violation of law of defendants as aforesaid, and because of the failure and breakage of the cast iron pipe as aforesaid, LEAVELL sustained damage as follows:

"Damages to the real property, damages to the building; wreckage, damage and depreciation of fixtures, equipment and furnishings, and additional construction costs for temporary power, hoisting, clean-up, job security and supervision and administration as a result thereof;

"LEAVELL suffered damages in the sum of $283,294.50 by reason of its interest in said damaged objects and its contractual duty to restore the damaged objects and complete the construction project. According to the terms and conditions of the insurance policy, ST. PAUL was required to and did reimburse, indemnify and pay to LEAVELL said sum. By reason of said payment and by reason of the provisions of the policy of insurance, and by reason of the principle of equitable subrogation, ST. PAUL has become subrogated to all of the rights of LEAVELL up to the amount of said payment, against defendants, and each of them;"

Upon the case being called for jury trial the court preliminarily determined a special defense raised by amended answers and cross-complaints, ruled as a matter of law that St. Paul could not maintain a subrogation action against defendants and rendered judgment as follows: "All parties stipulated that the Court could try the special defense, of each of these Defendants, that the Plaintiff, St. Paul Fire and Marine Ins. Co., a corporation, was prohibited by law from suing and recovering from its insureds. [¶] The Court, having considered the stipulations of counsel, Plaintiff's Exhibit 1, and the oral stipulation of counsel, as to the facts, and the Insurance Contract, Plaintiff's Exhibit 2, and having heard argument of counsel: [¶] IT IS ORDERED ADJUDGED AND DECREED, that Judgment be for the Defendants, Rockwin Prestressed Stone, a corporation, aka Rockwin Corporation, a corporation for costs in the sum of $1403.54; Progressive Transportation Company, a corporation for costs in the sum of $715.08; Murray Plumbing and Heating Corporation, a corporation for costs in the sum of $1163.52; Barnard Engineering Company, a corporation for costs in the sum of $565.42; and

Russell Back-Hoe Rentals, Inc., a corporation, and against the Plaintiff, St. Paul Fire and Marine Ins. Co., a corporation."[2]

## Contentions

St. Paul appeals contending that (1) the judgment is void because the trial court proceeded to try the special defense under the assumption such a procedure was stipulated to by counsel, and (2) the judgment itself is erroneous as a matter of law.

The bases of the second contention appear to be that, even though the subcontractors were listed as additional insureds under the policy for property damage only, the policy did not extend coverage to them for the loss so as to prevent subrogation against them and they were contractually obligated to indemnify the general contractor therefor under the provisions of the subcontracts.

## Discussion

We need not linger over the contention that the trial court committed "judicial" error in reciting in the judgment that "all parties stipulated that the court could try the special defense. . . ." We have considered the reporter's transcript of proceedings commencing June 24 and concluding June 26, 1975. ▪ It appears therefrom that it was not unreasonable for the court to conclude as it did with respect to trial of the issue raised by the special defenses.

---

[2]While not clear from the record before us, it is assumed trial of the cross-complaints was placed off calendar because resolution of the special defense in favor of defendants would dispose of this litigation in its entirety. Presumably affirmance of the judgment will result in formal dismissal of the cross-complaints. It appears that the parties considered the special defense to be one "not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof, . . ." authorizing trial thereof prior to trial of any other issues. (Code Civ. Proc., § 597; *Cohn* v. *Bugas*, 42 Cal.App.3d 381, 389 [116 Cal.Rptr. 810], and cases cited.) Under such circumstances the so-called one judgment rule is not violated. (Cf. *Fleuret* v. *Hale Constr. Co.*, 12 Cal.App.3d 227 [90 Cal.Rptr. 557].) In any event no issue of one judgment has been raised. We deem the procedure employed to be governed by section 597 *supra*, wherein it is provided in pertinent part: ". . . the court may, upon the motion of either party, proceed to the trial of such special defense or defenses before the trial of any other issue in the case, and if the decision of the court, or the verdict of the jury, upon any special defense so tried (other than the defense of another action pending) is in favor of the defendant pleading the same, judgment for such defendant shall thereupon be entered and no trial of other issues in the action shall be had unless such judgment shall be reversed on appeal or otherwise set aside or vacated; . . ." and wherein review of the decision on the special defense is contemplated on appeal from the judgment entered thereon.

Preliminarily the procedural aspects of the trial were discussed. At the beginning the court and counsel for St. Paul expressed doubt the special defenses raised only questions of law and suggested that it was highly probable factual matters might first have to be resolved by the jury before the legal issue could be resolved. However, under pressure from defense counsel, acquiesced in by counsel for St. Paul, the court agreed to attempt to resolve the special defenses first pursuant to oral and written stipulations of fact. The record reveals that counsel for St. Paul was agreeable to this procedure and actively participated in the factual and legal presentation of this issue to the court. While it is true that no formal motion or stipulation was made or advanced, the procedure finally adopted by the court was agreed to by all concerned without reservation or objection. We have no hesitancy in holding that the trial court's conclusion that the parties "stipulated" to the procedure was fully supported by the record. If not, and it was in fact an erroneous assumption on its part, the error was invited. Furthermore, no showing has been made that the procedure adopted by the court was prejudicial to the plaintiff. It should be borne in mind that the gravamen of St. Paul's action is equitable subrogation. Being a proceeding in equity the matter would ordinarily be determined by the court. (*Raedeke* v. *Gibraltar Sav. & Loan Assn.*, 10 Cal.3d 665, 671 [111 Cal.Rptr. 693, 517 P.2d 1157]; *Meyer Koulish Co.* v. *Cannon,* 213 Cal.App.2d 419, 430-431 [28 Cal.Rptr. 757].) For reasons to be stated, the special defense was susceptible of determination under the procedure agreed upon by the parties.

We turn next to the substantive issue of whether, under the facts of the case, St. Paul could subrogate against the Leavell subcontractors. ■ Generally the right of subrogation applies in all cases in which a person, not a volunteer, pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter. This equitable doctrine of subrogation is to be liberally applied to promote justice and does not necessarily rest upon contract or privity, but arises out of the nature of the contract of insurance as a contract of indemnity. (*Meyer Koulish Co.* v. *Cannon, supra,* 213 Cal.App.2d 419, 423-424.) ■ It is clear that where, by the terms of the policy under which the loss is paid there is no coverage extended to others, subrogation is permitted as against those others responsible for the loss. (*Pacific Indem. Co.* v. *Truck Ins. Exch.,* 269 Cal.App.2d 420, 426 [74 Cal.Rptr. 793].)

In the instant case the stipulated facts disclose St. Paul issued a builder's risk insurance policy which listed the insured as "C. H. Leavell & Company . . . for its account and/or the account of its subcontractors." The policy insured against "all risks of direct physical loss, damage or destruction . . . of property of the assured or of others in custody or control of the assured" excluding loss caused directly or indirectly by defective materials or faulty workmanship or error in design. . . ." St. Paul advances the unique argument that this particular exclusion applies only to the subcontractors and not to Leavell because the loss was not caused directly or indirectly by *Leavell's* defective materials, faulty workmanship or errors in design, but was caused directly or indirectly by that of the *subcontractors.* As noted above the policy makes no such distinction as to the source of the defect, fault or error and the exclusion must be uniformly applied as to all insureds. Either all insureds were covered or none was covered.

The policy also excluded loss "if at the time of loss, there is other valid and collectible insurance which would attach if this insurance had not been effected." It was stipulated that no other builder's risk coverage was available although each subcontractor had a policy of liability insurance with an insurance carrier other than St. Paul. It was also stipulated that:

"ST. PAUL FIRE & MARINE INSURANCE CO. paid under its builders' risk policy approximately $283,000.00 to the general contractor, C. H. LEAVELL & CO., who thereafter disbursed a part of the proceeds of the funds paid by ST. PAUL FIRE & MARINE INSURANCE CO. to various subcontractors. The disbursements of the proceeds of the monies received by C. H. LEAVELL & CO. from ST. PAUL FIRE & MARINE INSURANCE CO. under the builders' risk policy were disbursed as shown by Exhibit A which is attached hereto."

The subcontracts in question gave Leavell the option to carry the insurance and, if it elected to do so, subcontractors "shall have an interest therein as determined by contractor to the extent same covers work of the subcontract." It also obligated the subcontractors to indemnify contractor for damage to others resulting from its failure in the performance of the work. This obligation was insured against by each under the liability policies. Apparently the damage of each was paid by Leavell from the funds furnished to it by St. Paul under the coverage afforded by the builder's risk policy.

■ St. Paul also argues that the judgment must be reversed "[b]ecause the Builders Risk policy excludes the Respondents [subcontractors] from coverage, because the policy provides only property damage and not liability coverage, and because the sub-contract requires Respondents to indemnify C. H. Leavell, St. Paul has a right to pursue the Respondents by its subrogation claim." We do not agree. The argument is predicated upon the fact that subcontractors are not insureds under the policy, thus rendering them third parties against whom Leavell would have a right of indemnity to which St. Paul could succeed. We find the argument by which St. Paul seeks to eliminate the subcontractors as insureds tenuous to say the least. The policy was obviously procured by Leavell for the mutual benefit of the subcontractors and clearly extends coverage to them as additional assureds. Furthermore, there was no other valid or collectible insurance "which would attach if this insurance had not been affected" because, admittedly, the subcontractors had not obtained "other" builder's risk coverage. It is not clear that the existence of third party liability coverage is sufficient to render the other insurance exclusion effective. Such coverage would not necessarily "attach" simply because a builder's risk policy had not been obtained. The other insurance clause is ambiguous and, under accepted principles of interpretation, must be deemed to have meant other similar insurance, to wit, builder's risk. (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914].)

We find St. Paul's argument that as subrogee of Leavell it assumes Leavell's contractual right to indemnity under section 37 of the subcontracts to merit further mention. Assuming arguendo that St. Paul succeeds to this contractual right, it is immediately faced with the effect of its having written the insurance in question. Since the builder's risk policy covered all property under the custody or control of Leavell, it follows that section 37 is inapplicable because Leavell would have no liability for damages to property sustained by any subcontractor as such damages would have been compensated under the policy. Although the same is not necessarily true as to the deductible portion of damages, St. Paul is also not concerned with that portion.

■ We find it difficult, if not impossible, to conclude that subcontractors were not insured under the policy for any of the reasons suggested by St. Paul. The validity of their claims to coverage was recognized by both St. Paul and Leavell when the former paid the total amount necessary to reimburse each for his property damage. It matters not that

the lump sum was paid to Leavell and distributed by it to the others. That procedure appears to have been contemplated by the parties wherein Leavell was insured for "its account and/or the account of its subcontractors." Certainly St. Paul would not have made payment under the policy unless it believed itself obligated to so do or unless it did so under a reservation of rights. To do otherwise would result in its being a volunteer to whom subrogation would have to be denied on that ground. Having determined that the subcontractors were insured under the policy for the loss in question, the principle of equitable subrogation cannot be relied upon to effect recovery. St. Paul obligated itself for a substantial premium to pay this loss. Having accepted the premium and paid the loss, it would be inequitable to permit it to recoup under the guise of equitable subrogation in this case.

We have refrained to this point from discussing the case law, if any, applicable hereto. It is conceded that this is a case of first impression in this state. We have examined the cases cited by all parties and conclude that the bulk of authority elsewhere establishes the principle that an insurer may not subrogate against a coinsured of its subrogor. We see no reason not to follow this line of authority particularly since the logic and the equities would seem to support such a rule. As was said in *Home Insurance Company* v. *Pinski Brothers, Inc.* (1972) 160 Mont. 219 [500 P.2d 945 at page 949]:

"To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate these basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

"No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty. 16 Couch on Insurance 2d, § 61:133; see also 46 C.J. Insurance

§ 1209(b); 16 Couch on Insurance 2d, § 61:136. This principle is succinctly stated in Chenoweth Motor Co. v. Cotton, 2 Ohio Misc. 123, 207 N.E.2d 412, 413: "* * * it is axiomatic that [an insurance company] has no subrogation rights against the negligence of its own insured.' (Bracketed material paraphrased). To allow subrogation under such circumstances would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured and thus avoid the coverage which its insured purchased."

Further pertinent comments upon the rule are noted in *New Amsterdam Casualty Company* v. *Homans-Kohler, Inc.* (D.R.I. 1969) 305 F.Supp. 1017 at pages 1019-1020, where the court stated:

"It is well settled that the rule that an insurer who has paid the loss from a peril insured against may be subrogated to the claims which the insured may have against any person whose negligence caused the injury does not apply in a case where the injury was caused by the negligence of the insured himself. American Surety Co. of New York v. Canal Insurance Co., 1958, 4 Cir., 258 F.2d 934; Builders & Manufacturers Mut. Casualty Co. v. Preferred Automobile Ins. Co., 1941, 6 Cir., 118 F.2d 118; Federal Ins. Co. et al. v. Tamiami Trail Tours, Inc., et al., 1941, 5 Cir., 117 F.2d 794; 16 Couch on Insurance 2d Subrogation, Sec. 61:133.

"Additionally, the courts have consistently held that where an insurance company has paid a loss to one insured under its policy it cannot as subrogee recover the amount so paid from a coinsured under said policy even though the latter's negligence may have caused said loss, there being no fraud or design on his part. General Insurance Company of America v. Stoddard Wendle Ford Motors, 1966, 67 Wash.2d 973, 410 P.2d 904; Louisiana Fire Ins. Co. v. Royal Indemnity Co., 1949, La.App., 38 So.2d 807; Glens Falls Ins. Co. v. Globe Indemnity Co., 1948, 214 La. 467, 38 So.2d 139; Allegheny College v. Crump, Inc., 1959, 21 Pa.Dist. & Co.R.2d 207.

"In General Insurance Company of America v. Stoddard Wendle Ford Motors, supra, the Court held at page 908 of 410 P.2d:

" 'Cases in which an insurance company attempts to recover, as a subrogee, against a party for whose benefit the insurance was written and whose· negligence has occasioned the loss, are concededly rare, but there are some (mostly in the field of builder's risk insurance). The courts have

consistently held, in the builder's risk cases, that the insurance company —having paid a loss to one insured—cannot, as subrogee, recover from another of the parties for whose benefit the insurance was written even though his negligence may have occasioned the loss, there being no design or fraud on his part.' "

Finally we note, in its closing brief, St. Paul points out that under the pleadings and stipulations defendants Russell Back-Hoe Company and Progressive Transportation Company were not subcontractors of Leavell but rather of Murray and Rockwin respectively and thus were not insured under the St. Paul policy as subcontractors of Leavell. This distinction, if such be a distinction, is not important in view of the language used in the builder's risk policy. The policy describes "property covered" as being: "any and all materials, machinery, equipment and supplies (including labor costs and other incidental construction expenses) of any nature whatsoever, the property of the assured or the property of others in the custody or control of the assured, to be used in or incidental to the construction . . . ." It is clear that the intent of the policy was to cover all property, regardless of ownership, which was being used in construction of the building since it would thereby be under the custody or control of the insured prime contractor. Whether such property is owned by a subcontractor or a subcontractor of a subcontractor is immaterial since the property falls within the policy's description of "property covered" and thus would make the owner an additional insured. Neither is it necessary that the owner suffer any actual loss to be deemed an additional insured. (See *United States Fire Insurance Company* v. *Beach* (La.App. 1973) 275 So.2d 473, 475-476.)

The judgment is affirmed.

Cobey, Acting P. J., and Potter, J., concurred.