[No. B134182. Second Dist., Div. Three. Jan. 9, 2002.]

TRUCK INSURANCE EXCHANGE, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Barger & Wolen, Stephen C. Klein and Michael J. Rothman for Plaintiff and Appellant.

Lloyd W. Pellman, County Counsel, Ada Gardiner, Principal Deputy County Counsel; Pollak, Vida & Fisher, Girard Fisher and Daniel P. Barer for Defendant and Respondent.

## OPINION

**KITCHING, J.**—Truck Insurance Exchange (Truck) sued County of Los Angeles (County) to recover costs that Truck incurred to defend its insured Santa Marta Hospital (Santa Marta) in a medical malpractice action. Truck sought reimbursement of those defense costs from County based on the doctrine of equitable subrogation, seeking to enforce Santa Marta's rights against County under an indemnity agreement. Truck and County both moved for summary judgment. The trial court determined that Truck was not entitled to subrogation against County because County was an additional insured under the policy that Truck had issued to Santa Marta, and granted summary judgment to County.

Truck appeals the judgment in favor of County. Truck contends County equitably should bear all of Santa Marta's defense costs because County caused Santa Marta to incur the defense costs. Truck also argues that County's status as an additional insured under the Truck policy does not defeat Truck's right to equitable subrogation because County's liability for Santa Marta's defense costs is not a liability within County's coverage. We agree that County's status as an additional insured does not prevent subrogation because the policy does not cover County's liability arising from its own negligence. We conclude that Truck is entitled to equitable subrogation because County's negligence caused Santa Marta to incur the defense costs and County equitably should bear all of the defense costs. We therefore reverse the summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Hospital and Medical Care Agreement*

County and Santa Marta entered into a Hospital and Medical Care Agreement (the Agreement) in November 1990, under which Santa Marta agreed to provide obstetrical services for patients referred by County. County agreed to refer only patients who presented a low risk of medical complications. County agreed to indemnify Santa Marta against any claim for damages arising out of the provision of professional services under the Agreement. County also agreed to indemnify Santa Marta against any claim for damages "arising from or connected with services performed by County pursuant to this Agreement."

Santa Marta agreed to indemnify County against any claim for damages "arising from or connected with [Santa Marta's] operations or its services hereunder," but only if the claim was not covered by County's indemnity for

professional services and only for County's "vicarious or other indirect liability . . . resulting from the acts or omissions of [Santa Marta]." Santa Marta also agreed to maintain liability insurance with County named as an additional insured.

### 2. *The Insurance Policy*

Truck had issued a comprehensive hospital liability insurance policy to Santa Marta in September 1990, agreeing to indemnify and defend any claim against Santa Marta alleging its liability arising out of the rendering of or failure to render medical services.

Truck later named County as an additional insured on the policy, effective as of November 1990. The additional insured endorsement stated that it extended coverage to County, "but only for legal liability arising out of the acts or omissions of the named insured [Santa Marta], as respects the agreement to provide Obstetrical & Newborn Care [the Agreement]," and that it did "not extend coverage to the acts or omissions of County of Los Angeles [or its] agents, officers, and employees."

### 3. *The Panduro Action*

Rosa Panduro received prenatal care at a County medical clinic in 1992. County referred her to Santa Marta for the delivery, although she was a high-risk patient. She and her newborn child sustained injuries during the breech birth at Santa Marta in 1992.

Rosa and Jocelyn Panduro sued Santa Marta, County, and others in October 1994 for medical malpractice relating to the prenatal care, delivery, and postnatal care (the *Panduro* action). County initially retained counsel who filed an answer on Santa Marta's behalf, but County then declined to provide a further defense based on its contention that it had not referred Panduro to Santa Marta and therefore had no duty to indemnify or defend Santa Marta under the Agreement. Santa Marta then tendered its defense to Truck under the policy. Truck accepted the tender and provided a defense. During the *Panduro* action, Truck sought reimbursement from County for Santa Marta's defense costs, but County refused. County paid its own defense costs in *Panduro* and did not tender its defense to Truck under the policy at any time before the entry of judgment.

The jury found that County and an individual doctor were negligent and that they bore, respectively, 90 percent and 10 percent of the responsibility for the Panduros' injuries, and that Santa Marta was not negligent and bore

no responsibility for the injuries. The court awarded judgment against County and the doctor in the total amount of over $7 million in October 1997. County appealed the judgment.

County tendered its defense and indemnification in *Panduro* to Truck in September 1998, for the first time. Truck rejected the tender.

County and the Panduros entered into a settlement in January 1999 and jointly requested that we reverse the judgment in the *Panduro* action. We requested briefing and then declined the request in a nonpublished opinion. (*Panduro v. County of Los Angeles* (Aug. 23, 2000, B118305).) The parties later stipulated to dismiss the appeal, and we did so in November 2000.

### 4. *The Present Action*

Truck sued County in December 1997 alleging that County was contractually obligated to indemnify and defend Santa Marta in the *Panduro* action and that Truck was entitled to reimbursement of those defense costs under the doctrine of equitable subrogation. County cross-complained against Truck, Santa Marta, and Santa Marta's counsel in *Panduro*, alleging various causes of action related to an alleged conflict of interest due to the counsel's representation of County in other matters. The trial court sustained demurrers to the cross-complaint and entered judgment on the cross-complaint in favor of Truck, Santa Marta, and Santa Marta's counsel in August 1998. We later reversed the judgment in a nonpublished opinion. (*Truck Ins. Exchange v. County of Los Angeles* (Mar. 16, 2000, B125001).)

County and Truck subsequently both moved for summary judgment on the complaint. County moved, inter alia, on the grounds that it was an additional insured under the policy and that Truck was not entitled to subrogation against its own insured. County argued that the policy potentially covered its liability in *Panduro*, that Truck therefore had a duty to defend County in *Panduro*, and that Truck was not entitled to reimbursement from County of Santa Marta's defense costs in the same action. According to County, for Truck to obtain reimbursement from County for the defense costs of another insured in the same action would be inequitable. County maintained that the fact that it did not tender its defense to Truck before the entry of judgment in *Panduro* did not alter its status as Truck's insured or negate Truck's duty to defend County.

Truck moved for summary judgment on the grounds that it had paid $444,137.60 for Santa Marta's defense costs in *Panduro*, that County was primarily liable for Santa Marta's defense costs as indemnitor under the

Agreement and as the wrongdoer with respect to the Panduros, and that County's status as an additional insured did not defeat Truck's right to subrogation. Truck argued that the *Panduro* jury had found that County was directly liable to the Panduros for its own negligence and that Santa Marta was not negligent, County's negligence had caused Santa Marta to incur defense costs in *Panduro*, the additional insured endorsement did not extend coverage to County's liability for its own negligence, and County's status as an additional insured did not defeat its right to subrogation because County's liability for Santa Marta's defense costs was not a liability within County's coverage. It argued further that the duty to defend does not arise until a tender is made, and that at the time that County tendered its defense to Truck there was no potential for coverage because the *Panduro* jury had found that County was directly liable and not vicariously liable. Since a duty to defend or indemnify County never arose, Truck argued, it owed no duty to County in connection with *Panduro* and therefore was entitled to subrogation against County.

The trial court determined that the plaintiffs' allegations in the *Panduro* action were within the scope of County's coverage under the Truck policy. It stated that Truck would have had the duty to defend County if County had tendered its defense during the *Panduro* action, that County therefore "had the status of an 'additional insured' . . . regardless of the ultimate result at trial," and that "Truck may not sue its own insured for subrogation. (*St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Co.* (1976) 65 Cal.App.3d 66, 75 [135 Cal.Rptr. 120].)" Accordingly, the court granted summary judgment for County, denied Truck's summary judgment motion, and entered judgment in favor of County. Truck appeals.

CONTENTIONS

Truck contends County is liable for Santa Marta's defense costs under the Agreement and equitably should bear all of those defense costs because County caused Santa Marta to incur them. Truck also contends County's status as an additional insured under the Truck policy does not defeat Truck's right to equitable subrogation because County's liability for Santa Marta's defense costs was not a liability within County's coverage under the policy. Truck maintains that the court erroneously granted summary judgment for County and that Truck is entitled to summary judgment.

County contends Truck is not entitled to equitable subrogation because the equities do not favor Truck and County did not cause Santa Marta to incur the defense costs. County also contends County's liability for Santa Marta's

defense costs was a liability within County's coverage, and even if that liability was not within County's coverage, Truck had a duty to defend County in *Panduro* based on the plaintiffs' other allegations in that action. In either circumstance, County argues, Truck has no subrogation right against its own insured.

## DISCUSSION

### 1. *Standard of Review*

■ A party is entitled to summary judgment when there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855 [26 Cal.4th 80a, 107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant moving for summary judgment must show that one or more elements of the cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar*, at p. 849.) Once the defendant meets its burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of fact exists. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar*, at p. 849.) The moving party's affidavits must be construed strictly and the opponent's affidavits must be construed liberally, and any doubts as to the propriety of granting the motion must be resolved in favor of the opponent. (*City of Santa Cruz v. Pacific Gas & Electric Co.* (2000) 82 Cal.App.4th 1167, 1175-1176 [99 Cal.Rptr.2d 198].)

On appeal, we independently review the trial court's ruling and apply the same legal standard that governs the trial court. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) We affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) Since the parties here agree on the material facts with one notable exception, the matter presents principally legal issues as to whether Truck is entitled to subrogation against County. The only disputed factual issue presented is the reasonable amount of Santa Marta's defense costs.

### 2. *Equitable Subrogation*

■ "The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the

loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured. [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1292 [77 Cal.Rptr.2d 296].)

### 3. *Equitable Subrogation by an Insurer Against an Insured*

#### a. *The Law*

An insurer has no right of equitable subrogation against its own insured with respect to a loss or liability for which the insured is covered under the policy because, as between the insurer and the insured, the insurer assumes responsibility for the loss or liability. For the insurer to recover from its insured for an insured loss or liability would undermine the insured's coverage and would be inequitable. If the policy does not cover the insured for a particular loss or liability, however, it would neither undermine the insured's coverage nor be inequitable to impose the loss or liability on the insured if the insured caused or was otherwise responsible for the loss or liability. Although no prior California opinion clearly articulates this rule, the following cases illustrate our point.

*Home Insurance Company v. Pinski Brothers, Inc.* (1972) 160 Mont. 219 [500 P.2d 945, 949] involved two insurers who the parties agreed were one and the same entity (insurer). The insurer had paid the insured hospital's property damage claim arising from a boiler explosion and sought equitable subrogation against the architects based on negligence. The architects tendered their defense to their liability insurer, which was the same entity as the plaintiff insurer. The court had determined in another action that the alleged negligence was within the architects' liability coverage. (500 P.2d at pp. 946-947.) It now held that the insurer could not be subrogated to a claim against its insured, the architects, for a liability for which the insured was

covered under the policy. (*Id.* at p. 949.) It stated that to allow subrogation in those circumstances would be inequitable, undermine the insured's coverage, and create a potential conflict of interest. (*Ibid.*)

*Pennsylvania Gen. Ins. v. Austin Powder* (1986) 68 N.Y.2d 465 [510 N.Y.S.2d 67, 502 N.E.2d 982, 985] involved the explosion of a rented truck carrying dynamite and blasting caps. The rental company's automobile insurance policy covered the renter and driver as additional insureds. The owner of another vehicle sued the rental company, renter, and driver for damages to his vehicle. The insurer settled the claim on behalf of the rental company and then, in the name of the rental company, cross-claimed against the renter and driver for equitable subrogation based on contractual indemnity. (502 N.E.2d at pp. 983-985.) The court held that "an insurer may not be subrogated to a claim against its own insured, at least when the claim arises from an incident for which the insurer's policy covers that insured [citations]." (*Id.* at p. 985.) It stated that an insurer cannot be allowed to impose an insured loss on the insured, and noted a potential conflict of interest that may cause the insurer to defend a claim less vigorously if the insurer could impose liability for the claim on its insured. (*Id.* at pp. 985-986.)

*St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.* (1976) 65 Cal.App.3d 66 [135 Cal.Rptr. 120] applied the same principle to first party property insurance. The court held that where a builder's risk policy covered the contractor and subcontractors for damage to property used in the construction, the insurer could not be equitably subrogated to the contractor's claims for damages against the subcontractors. (*Id.* at p. 75, citing *Home Insurance Company v. Pinski Brothers, Inc., supra,* 500 P.2d 945.) The insurer had paid an aggregate amount to the contractor, who had distributed part of that amount to the subcontractors to compensate each for its own property loss. In concluding that "the subcontractors were insured under the policy for the loss in question," the court did not distinguish between each subcontractor's coverage for loss to its own property and each subcontractor's coverage for its liability for loss to the contractor's property, such as a liability policy would provide. (*Murray Plumbing, supra,* 65 Cal.App.3d at p. 75.) The court apparently concluded that since the policy covered the contractor and subcontractors collectively for the same risks of loss, the policy was intended for the "mutual benefit" of all insureds, and the insurer assumed an obligation to the contractor *and to the subcontractors* for losses to the contractor's property. (*Id.* at pp. 73-74; accord, *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.* (1976) 59 Cal.App.3d 860, 865-866 & fn. 5 [131 Cal.Rptr. 211] [fire insurance covering leased premises].)

Consistent with these authorities, courts have held that if a policy does not cover an insured for the particular loss or liability that the insurer seeks to

impose on the insured, there is no obstacle to equitable subrogation. The court in *North Star Reinsurance v. Continental Ins.* (1993) 82 N.Y.2d 281 [604 N.Y.S.2d 510, 624 N.E.2d 647, 653] held that an insurer was entitled to equitable subrogation against an insured contractor for personal injury claims, where those claims were excluded from the contractor's liability coverage. The court stated that the rule prohibiting an insurer's subrogation against an insured applies only "for a claim arising from the very risk for which the insured was covered." Similarly, *Amica Mut. Ins. Co. v. Auto Driveway Co.* (1992) 171 Ariz. 506 [831 P.2d 882, 885-886] held that an automobile insurer was entitled to subrogation against a hired driver for damage to the vehicle, because liability coverage extended to the driver but collision coverage did not.

The rule illustrated by these cases prevents an insurer from equitably subrogating against an insured where the policy covers the insured for the particular loss or liability that the insurer seeks to impose on the insured. If the policy does not cover the insured for a particular loss or liability, however, the insurer does not assume responsibility to the insured for the loss or liability, and it would not be inequitable for the insurer to impose the loss or liability on the insured.

The question here is whether County's liability coverage under the Truck policy includes its potential liability to Santa Marta for Santa Marta's defense costs where that liability arises from County's own negligence (as discussed in pt. 4, *post*). As we shall explain, County's liability coverage under the policy does not include liability for County's own negligence, so Truck was not responsible to County for County's liability to Santa Marta, and the rule preventing an insurer from equitably subrogating against its own insured therefore does not apply.

b. *County Has No Coverage for Liability for Its Own Acts or Omissions*

We construe the additional insured endorsement according to well-established rules of contract interpretation. Our fundamental goal is to give effect to the parties' mutual intent. (Civ. Code, § 1636; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) We ascertain that intent solely from the written policy provisions, if possible. (Civ. Code, § 1639; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) We consider the policy as a whole and construe the language in context, rather than interpret a provision in isolation. (Civ. Code, § 1641; *Bank of the West*, at p. 1265.) We

interpret words in accordance with their ordinary and popular sense, unless words are used by the parties in a technical sense or a special meaning is given to the words by usage. (Civ. Code, § 1644; *AIU Ins.*, at p. 822.) If the contractual language is clear and explicit, it governs. (Civ. Code, § 1638; *Bank of the West*, at p. 1264.)

■   We resolve any ambiguity, where a provision is susceptible of more than one reasonable interpretation, by interpreting the provision according to the objectively reasonable expectations of the insured. (Civ. Code, § 1649; *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) If there is an ambiguity, we generally construe insuring clauses broadly to protect the reasonable expectations of the insured (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667-668 [42 Cal.Rptr.2d 324, 913 P.2d 878]) and construe exclusionary clauses strictly against the insurer (*Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 414 [79 Cal.Rptr.2d 52]). Thus, an exclusion must be clear and unambiguous to be given effect. (See, e.g., *Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103, 1112-1114 [73 Cal.Rptr.2d 174].)

■   The first paragraph of the additional insured endorsement states that County is an additional insured, "but only for legal liability arising out of the acts or omissions of the named insured [Santa Marta], as respects the agreement to provide Obstetrical & Newborn Care [the Agreement] . . . ." County contends the phrase "arising out of" in this context should be interpreted broadly so that County's coverage is not limited to County's vicarious liability for the acts or omissions of Santa Marta, but includes County's liability for its own negligence.

The second paragraph of the endorsement limits County's coverage, however. It states that "This endorsement does not extend coverage to the acts or omissions of County of Los Angeles [or its] agents, officers, and employees." This exclusionary clause clearly and explicitly excludes coverage of County's liability for its own acts or omissions, or those of its agents, officers, or employees. County's coverage therefore is limited to its vicarious liability, that is, its liability for acts and omissions of persons other than County or its agents, officers, or employees, in connection with the Agreement. The policy does not cover County's liability arising from its own negligence and therefore does not cover County's liability for Santa Marta's defense costs as County argues.

Moreover, assuming for purposes of argument that Truck would have had a duty to defend County in *Panduro* based on other allegations if County had

tendered its defense in that action, Truck's potential duty to defend County would cover County's defense costs, not County's liability for Santa Marta's defense costs. Even if Truck had a duty to defend County, or, as County argues, a potential duty to defend contingent upon County's tender of its defense, the duty to defend does not create a duty to indemnify where the duty to indemnify does not exist. (See *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 [65 Cal.Rptr.2d 366, 939 P.2d 766].) The duty to defend therefore would not create a duty to indemnify County for liability caused by County's own negligence or make Truck responsible to County for County's liability for Santa Marta's defense costs.

### 4. *Truck Is Entitled to Equitable Subrogation Against County*

Truck claims a right of subrogation based on the indemnity clause in the Agreement between County and Santa Marta.

Truck has satisfied the following elements of equitable subrogation set forth in *Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra*, 65 Cal.App.4th at page 1292: Santa Marta's defense costs in *Panduro* are a loss for which County is liable under the Agreement; Truck has compensated Santa Marta for the same loss; Truck paid the loss to protect its own interest and not as a volunteer; Santa Marta has an existing, assignable cause of action against County that it could have asserted for its own benefit had it not been compensated for the loss by Truck; Truck has suffered damages caused by the act or omission upon which the liability of County depends; and Truck's damages are in a liquidated sum. The issue in this case, therefore, is whether Truck or County is primarily liable for the loss and whether justice requires that the loss be shifted entirely from Truck to County. We conclude that Truck is entitled to equitable subrogation because County caused the loss, Truck is not primarily liable for the loss, and equity requires that County bear the entire loss.

Some California courts have held that an insurer has a right of subrogation against a contractual indemnitor who indemnified the same loss only if the indemnitor *caused* the loss paid by the insurer. (*California Food Service Corp. v. Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 899-900 [182 Cal.Rptr. 67]; *Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 512, 514 [64 Cal.Rptr. 187]; see *Meyers v. Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 102-103 [77 P.2d 1084].) Others have held that the terms and circumstances of the indemnity agreement may compel the conclusion that the indemnitor, in equity, should bear the entire

loss even though the indemnitor did not cause the loss. (*Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.* (1997) 52 Cal.App.4th 553, 557-559 [60 Cal.Rptr.2d 591]; *Meyer Koulish Co. v. Cannon* (1963) 213 Cal.App.2d 419, 428-429 [28 Cal.Rptr. 757].)

*Patent Scaffolding Co. v. William Simpson Constr. Co., supra*, 256 Cal.App.2d 506, involved a general contractor who had agreed to obtain fire insurance for the benefit of a subcontractor and to indemnify the subcontractor against fire loss, but failed to obtain the insurance. When a fire of unknown origin damaged the subcontractor's equipment and materials, the subcontractor's insurers paid the loss and sued the general contractor for subrogation. (*Id.* at pp. 508-509.) The court held that the subcontractor's insurers were not entitled to equitable subrogation because the general contractor did not cause the loss. (*Id.* at pp. 512, 514.) Although the general contractor failed to obtain fire insurance as agreed and failed to comply with its indemnity obligation upon demand, it did not cause the fire and therefore had no equitable obligation to bear the entire loss as against the subcontractor's insurers. (*Ibid.*)

*California Food Service Corp. v. Great American Ins. Co., supra*, 130 Cal.App.3d 892, involved the sublessee of a restaurant who had agreed to obtain fire insurance for the benefit of the lessee and to indemnify the lessee against fire loss, but failed to obtain the insurance. (*Id.* at p. 898.) When a fire of unknown origin damaged the premises, the lessee's insurer paid the loss and sued the sublessee's insurer for subrogation. (*Id.* at p. 896.) Relying on *Patent Scaffolding Co. v. William Simpson Constr. Co., supra*, 256 Cal.App.2d 506, the court held that the sublessee and the lessee's insurer each had a contractual obligation to indemnify the lessee if the lessee were forced to compensate the building owners. As was the case in *Patent Scaffolding*, the lessee did not cause the fire and "no contractual provision or public policy" gave to the lessee's insurer an equitable position superior to the sublessee. (*California Food Service*, at p. 900.)

In *Meyer Koulish Co. v. Cannon, supra*, 213 Cal.App.2d 419, Cannon received jewelry on consignment and agreed by contract to accept the risk of loss until the jewelry was returned to Meyer Koulish. The jewelry was stolen from Cannon, and the theft was not due to any negligence by Cannon. (*Id.* at p. 423.) Meyer Koulish's insurer reimbursed Meyer Koulish for the loss and sued Cannon for equitable subrogation in the name of its insured. (*Ibid.*) The court held that the insurer was entitled to equitable subrogation because Cannon had expressly agreed to assume responsibility for loss of the jewelry, stating "They thereby accepted primary liability and it cannot be said

that [Cannon stands] on equal footing with the insurance company. The equities in this matter do not balance but preponderate in favor of the insurer of the bailor." (*Id.* at p. 429.) Thus the court concluded that the equities favored the insurance company, not Cannon, and that Cannon should bear the entire loss.

In *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc., supra,* 52 Cal.App.4th 553, a lessee of camera equipment agreed to pay for the equipment if it did not return it by a specified date. When the equipment was stolen, the insurer who had reimbursed the lessor sued the lessee for equitable subrogation. (*Id.* at p. 555) Although the lessee was not negligent and did not cause the loss (*ibid.*), the court held that the equities favored the insurer because the lessee agreed to return the equipment or pay for it and the insurer satisfied its indemnity obligation under the policy, while the lessee breached its obligation by failing to pay for the equipment. (*Id.* at pp. 558-559.)

This case differs from the preceding cases because here County *caused* the loss. County's negligent referral of a high-risk patient to Santa Marta resulted in injury to the Panduros, precipitated the Panduros' lawsuit against County and Santa Marta, and made it necessary for Santa Marta to incur defense costs. Since Santa Marta was not at fault and County's misconduct was a substantial factor in causing Santa Marta to incur defense costs, we conclude that County is primarily liable and equitably should bear the entire obligation. We therefore conclude that Truck has established a right of subrogation against County subject to any applicable defenses that County may have.

5.  *Truck's Summary Judgment Motion*

Truck does not address on appeal the issue of the amount that it is entitled to recover from County by way of subrogation. County acknowledged in its opposition to Truck's summary judgment motion that Truck had paid $444,137.60 to defend Santa Marta in *Panduro,* but County also presented evidence that the amount was unreasonable and that Truck itself had questioned the reasonableness of the amount paid. To be payable under a contract of indemnity, attorney fees incurred to defend a claim must be "incurred in good faith, and in the exercise of a reasonable discretion," unless a contrary intention appears. (Civ. Code, § 2778, subd. 3.) Since Truck has not established the amount recoverable, it is not entitled to summary judgment. In light of that factual dispute, we need not decide whether other defenses

asserted by County and argued in opposition to Truck's motion for summary judgment preclude summary judgment for Truck.

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court for further proceedings consistent with this opinion. Truck shall recover its costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied February 6, 2002, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein.